UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS DILL, THOMAS R. DILL, and NICHOLAS MELLO,<br>    *Plaintiffs*,<br>        *v.*<br>RON'S GOLF CAR RENTAL, INC.,<br>    *Defendant*. | Civil No. 3:12-cv-00137 (JBA)<br><br>July 12, 2012 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Thomas Dill's diversity suit against Defendant Ron's Golf Car Rental, Inc. claims wrongful termination under Connecticut state law. (Compl. [Doc. # 1] ¶ 2.) On April 2, 2012, Thomas R. Dill and Nicholas Mello were added as plaintiffs. (Am. Compl. [Doc. # 20].) The Plaintiffs' motion for prejudgment remedy [Doc. # 21] was referred for hearing to Magistrate Judge Margolis (*see* Order of Ref. [Doc. # 22]), who ruled that Plaintiffs were collectively entitled to a prejudgment remedy totaling $59,292. (Jan. 24, 2013 Ruling [Doc. # 34] at 22–23.) Defendant now moves [Doc. # 45] pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, arguing that the prejudgment remedy amount demonstrates that Plaintiffs cannot establish that the amount in controversy exceeds $75,000. For the reasons stated below, the Court denies Defendant's motion to dismiss.

**I.     Factual Allegations**

Plaintiffs Thomas Dill, Thomas R. Dill, and Nicholas Mello, residents of Chicopee, Massachusetts, were employed by Defendant Ron's Golf Car Rental, Inc., a

company incorporated in Connecticut with its principal place of business in Connecticut. (Am. Compl. ¶¶ 3–6.)

In 2005, Plaintiff Thomas Dill was hired by Defendant as a truck driver. (*Id.* ¶ 6.) He developed a close relationship with Ronnie Joppru, the owner of Ron's Golf Car Rental, Inc., and as a result, Plaintiff's son Thomas R. Dill and his nephew Nicholas Mello were hired the next year. (*Id.* ¶ 8.) In August 2011, Ronnie Joppru was hospitalized for a mental condition and his wife and father-in-law Kathleen Joppru and Nick Carlo began overseeing the daily operations of the company. (*Id.* ¶¶ 10–11.) Shortly thereafter, Thomas Dill's wages were reduced and, though he was unhappy, he continued to work for Defendant. (*Id.* ¶ 12.) On August 25, 2011, he noticed that an above-ground gas tank had been installed at work. (*Id.* ¶ 15.) To Thomas Dill's inquiry of Nick Carlo whether the Defendant had proper permits for the installation of the gas tank (*id.* ¶ 18), Carlo replied that he had not requested permits for the tank. (*Id.* ¶ 20.) Plaintiff Thomas Dill then telephoned the Vernon Police Department. (*Id.*) A police officer arrived and spoke with Kathleen Joppru by telephone. (*Id.* ¶ 23.) After this conversation, the police officer informed Thomas Dill that he and the other Plaintiffs were not terminated, but that Kathleen Joppru had requested they be removed from the property. (*Id.* ¶¶ 24–25.) Thomas Dill left the property, called the Environmental Protection Agency, and filed a complaint against Defendant for the "improper[] installation of a gas tank next to an open watercourse." (*Id.* ¶ 27.) Later that evening, Kathleen Joppru told Plaintiff Thomas

Dill by telephone that "he and his family were not welcome to return to work," thereby terminating their employment. (*Id.* ¶¶ 28–31.)

Plaintiffs allege that they were wrongfully terminated in violation of Conn. Gen. Stat. § 31-51q as a result of Thomas Dill's complaints concerning the installation of the above-ground gas tank on Defendant's premises. (*Id.* ¶¶ 33, 36.) In their Amended Complaint, Plaintiffs claim they are entitled to damages in excess of $75,000 for back pay, the value of lost employment benefits, pay for the years Plaintiffs would have worked absent their wrongful termination, compensation for physical and emotional pain and suffering, punitive damages, and attorney's fees and costs. (*Id.* at 13.)

II.     **Discussion**[1]

Defendant moves to dismiss this action for lack of subject matter jurisdiction, arguing that Plaintiffs have failed to allege damages meeting the requisite jurisdictional amount in controversy. Further, Defendant argues that even if Plaintiff Thomas Dill's

---

[1] "[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical," *Lerner v. Fleet Bank, N.A.*, 318 F.3d 311, 128 (2d Cir. 2003), except that "the party asserting jurisdiction bears the burden of proving that the case is properly in federal court," *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d. Cir. 2008), *aff'd*, 130 S. Ct. 2869 (2010) (internal citations and quotation marks omitted). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.*

damages exceed $75,000, the Court cannot exercise supplemental jurisdiction over Thomas R. Dill's and Nicholas Mello's claims because they are not part of the same case or controversy.

### A. Amount in Controversy: Plaintiff Thomas Dill's Claim

Defendant argues that Magistrate Judge Margolis's prejudgment damage award fell short of the $75,000 jurisdictional amount, and that this analysis should "trump plaintiffs' self-serving speculation" in the Amended Complaint that the amount in controversy requirement has been satisfied.  (Reply [Doc. # 50] at 2–3.)

District courts have diversity jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332.  "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)).  "This burden is hardly onerous, however, for [the Second Circuit] recognize[s] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) (internal quotation marks omitted).  "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable

does not meet the jurisdictional threshold." *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).  "[E]ven where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Brown v. New York State Supreme Court for Second Judicial Dist.*, 680 F. Supp. 2d 424, 429 (E.D.N.Y. 2010) (internal quotation marks and citations omitted). Insufficient amount in controversy may be found if "a specific rule of substantive law or measure of damages limits the money recoverable . . . [or if] independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction."  *Id.* (quoting Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 3d § 3702).  Because the Amended Complaint provides only a bare assertion that the amount in controversy has been met, the Court will look beyond the pleadings to information otherwise available in the record.  *See United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square,* 30 F.3d 298, 305 (2d Cir. 1994) ("Where the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record.").

1. *Lost Wages, Lost Benefits, and Future Lost Wages*

In support of their motion for prejudgment remedy, Plaintiffs submitted an affidavit by Plaintiff Thomas Dill, claiming approximately $150,000 in net lost wages and

other damages as of October 5, 2012.  (Thomas Dill Aff. [Doc. # 21] at 8, ¶ 20.)  In his testimony before Magistrate Judge Margolis, he claimed past and future lost wages and future lost wages totalling $190,250.  (Jan. 24, 2013 Ruling at 15.)  Of the $190,250 total lost wage claims, Magistrate Judge Margolis found probable cause for attachment only in the amount of $34,475.  (*Id.* at 22.)

Defendant argues that the Court should rely on the prejudgment remedy attachment amount awarded to determine the amount in controversy.  (Reply at 3.)  However, because Magistrate Judge Margolis's ruling is based on a probable cause standard, not a legal certainty standard, and assesses only the extent to which Plaintiffs have shown in that hearing that they are entitled to prejudgment attachment (*see* Jan. 24, 2013 Ruling at 17), the prejudgment remedy award should not be dispositive of jurisdiction under 28 U.S.C. § 1332(a).  *See Wolde-Meskel*, 166 F.3d at 63 ("Legal certainty is analyzed by what appears on the face of the complaint; subsequent events—such as a valid defense offered by the defendant . . . —do not show plaintiff's bad faith or oust the jurisdiction." (internal quotation marks and citations omitted)).  Although Magistrate Judge Margolis rejected Plaintiff Thomas Dill's claimed $1500 weekly salary as not credible, his lost salary damage claim is central in the dispute between him and his employer and it does not appear to be claimed solely for the purpose of establishing jurisdiction.  *See Brown*, 680 F. Supp. 2d at 429 (explaining that courts should only find the amount in controversy requirement has not been met when independent facts show

the amount was claimed merely to secure jurisdiction). Because the prejudgment remedy ruling does not conclude to a legal certainty that Plaintiffs cannot prove a higher salary claim and/or non-economic damages that would meet the jurisdictional threshold, the prejudgment remedy ruling alone is insufficient to foreclose jurisdiction, although it may be useful in fleshing out the amount in controversy encompassed by the allegations of the Amended Complaint. *See Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757 F. Supp. 283, 285 (S.D.N.Y. 1991) ("In applying the legal certainty test, resort to matters outside the pleadings may be used to amplify the meaning of the complaint's allegations."). Here, the prejudgment remedy ruling clarifies that Plaintiff Thomas Dill claims that he suffered damages for lost wages, lost benefits, and future lost wages (Am. Compl. at 13), of approximately $190,000. (*See* Jan. 24, 2013 Ruling at 15.) That he did not secure a prejudgment remedy in that amount points to the quality of evidence offered at that stage, but not to any legal certainty that a greater damages sum could never be proved at trial.

Defendant also argues that Plaintiffs cannot include the value of future lost wages in their calculation of the amount in controversy because such damages are necessarily too speculative for the purpose of establishing jurisdiction. (Reply at 2.) The Court disagrees and will consider the claims for immediate future lost wages in determining the amount in controversy. *See Brown v. Austrian Airlines*, No. CV-97-3798(CPS), 1997 WL 913334, at *7 (E.D.N.Y. Dec. 9, 1997) (considering potential of plaintiff working three

additional years in finding reasonable probability that amount in controversy exceeded jurisdictional threshold); s*ee also White v. Loomis Armored US, Inc.*, 729 F. Supp. 2d 897, 902–03 (E.D. Mich. 2010) (collecting cases from the Third, Fourth, Sixth, Seventh, and Eighth Circuits showing that consideration of future lost wages is appropriate in determining amount in controversy).  While it is far from clear at this stage whether Plaintiffs will be able to prove the future earnings they claim, "[w]here the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook Am.*, 14 F.3d at 785.

### 2.  Emotional Pain and Suffering

In the Amended Complaint, Plaintiffs also seek compensation for non-economic damages based on their emotional pain and suffering (Am. Compl. at 13), pointing to testimony by Thomas Dill that he was hurt "tremendously" and had become a "broken man" after losing his job.  (Pls.' Mem. Opp'n [Doc. # 49] at 5 (internal quotation marks omitted).)  While such descriptions of emotional injury generally will not support a large damages award without supporting medical evidence, *see e.g., Weber v. Fujifilm*, No. 3:10-CV-401(JBA), 2013 WL 1149932, at *12–15 (collecting cases finding that "garden variety" emotional damages claims average approximately $50,000); *Schnazer v. United Technologies Corp.,* 120 F. Supp. 2d 200, 218 (D.Conn.2000) (remitting compensatory damage jury award of $175,000 to $40,000 and $45,000 where plaintiffs showed "neither extreme trauma nor permanent injury" and where plaintiffs lacked corroborating medical

8

testimony of their emotional damages), valuation of such injury is left to the common sense of the trial jurors. Informed by the prejudgment remedy that Plaintiff's full lost wage claim may not prevail, but coupled with a potential non-economic damage award, Plaintiffs have sufficiently shown the requisite amount in controversy. *See Braden v. Murphy*, No. 3:11 CV 884 (SRU), 2012 WL 1069188, at *2-3 (D. Conn. Mar. 29, 2012) (holding that in light of the Second Circuit's decision in *Scherer*, a mere assertion that plaintiff is entitled to emotional damages may be enough to establish the requisite amount in controversy). *But see Fedor v. Amica Mut. Ins. Co.*, No. 3:01 CV 795 (GLG), 2003 WL 77002, at *2 (D. Conn. Jan. 8, 2003) (plaintiff not permitted to "fill in the gap" between actual damages and requisite amount in controversy with "amorphous and difficult to quantify" emotional distress claim).

### 3. Attorney's Fees

The Amended Complaint also requests an award for reasonable attorney's fees. (Am. Compl. at 13.) "Attorney's fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to statute or contract." *Kimm v. KCC Trading, Inc.*, 449 F. App'x. 85, 85–86 (2d Cir. 2012). The Connecticut statute pursuant to which Plaintiffs bring their claims for wrongful termination states "the employer [] shall be liable. . . for reasonable attorney's fees as part of the costs of any such action for damages." Conn. Gen. Stat. § 31-51q. The Court therefore includes reasonable attorney's fees in its calculation of the amount in controversy. Magistrate Judge Margolis

accepted an amount of $6,750 as a reasonable estimate of Plaintiffs' attorney's fees (Jan. 24, 2013 Ruling at 20), and this additional amount further confirms that Plaintiffs have sufficiently shown the requisite amount in controversy. Further, this figure may also be used as the proxy for the punitive damages which Plaintiffs claim under Connecticut common law. *See Graubart v. Jazz Images, Inc.*, No. 02-CV-4645 (KMK), 2006 WL 1140724, at *4 (S.D.N.Y. Apr. 27, 2006) ("[T]he Court should include plaintiff's punitive damage claims in this calculation to the extent they can be recovered under the applicable state law.").

Because Plaintiff Thomas Dill's claims for lost wages, emotional damages, attorney's fees, and punitive damages may exceed $75,000, the requirements of diversity jurisdiction have been met as to Plaintiff Thomas Dill's claims.

### B. Supplemental Jurisdiction

Plaintiffs argue that the Court should exercise supplemental jurisdiction over Thomas R. Dill's and Nicholas Mello's claims[2] because they arise out of "the same common controversy" (Pls.' Mem. Opp'n at 6), in that Thomas R. Dill and Nicholas Mello were "not welcome to return to work" after Thomas Dill had complained about Defendant's unlawful installation of the above-ground gas tank. (Am. Compl. ¶¶ 28–31.)

---

[2] Plaintiffs' counsel conceded at oral argument that these individual claims did not satisfy the amount in controversy individually, and that they could not be aggregated to do so.

Defendant argues that, even if Plaintiff Thomas Dill's claim exceeds the jurisdictional threshold, the Court should not exercise supplemental jurisdiction over Thomas R. Dill's and Nicholas Mello's claims because each plaintiff had a "different job[]; different tenure[] with the company, different circumstances of lay-off; different mitigation efforts, and . . . different claim[] for damages" and as such, each plaintiff's claims arise out of a different case or controversy. (Reply at 3.)

In instances in which one diverse plaintiff's claim meets the amount-in-controversy requirement of 28 U.S.C. § 1332, district courts may exercise supplemental jurisdiction over intertwined claims arising out of the same case or controversy of other diverse plaintiffs, even though those claims do not individually exceed $75,000, when they "derive from a common nucleus of operative facts." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation marks omitted); s*ee also* 28 U.S.C. § 1367; *Muchnick v. Thomson Corp.*, 509 F.3d 116, 127 (2d Cir. 2007).

Plaintiff Thomas Dill's claims in Counts One, Two, and Five are based on allegations that he was fired in retaliation for his complaints concerning the Defendant's installation of an above-ground gas tank. (Am. Compl. at 6 ¶ 33, 7 ¶ 33, 10 ¶ 33.) In Counts Three, Four, and Six, Plaintiff Thomas R. Dill and Plaintiff Nicholas Mello allege that they were fired in retaliation for Thomas Dill's complaints. (Am. Compl. at 8 ¶ 33, 9 ¶ 33, 11 ¶ 33.) The core common circumstance alleged by all Plaintiffs is Defendant's intention to retaliate for Thomas Dill's complaints. While each plaintiff will put forth

different facts concerning the damages to which he may be entitled based on his own salary and benefits, each plaintiff claims a common set of antecedent facts and a retaliatory purpose resulting in his termination. Based on the allegations in the Amended Complaint, Plaintiff Thomas R. Dill's and Plaintiff Nicholas Mello's claims sufficiently arise from the same common nucleus of operative facts as Thomas Dill's such that the Court may exercise its supplemental jurisdiction over their claims.

### III.  Conclusion

For the reasons state above, the Court denies Defendant's Motion [Doc. # 45] to Dismiss.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of July, 2012.